1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9
10         FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
JORGE L. RUBIO,                    )   No. C 10-1963 JSW (PR)
12                                 )
           Plaintiff,              )   **ORDER GRANTING MOTION**
13                                 )   **FOR SUMMARY JUDGMENT; ON**
           v.                      )   **PENDING MOTIONS**
14                                 )
MIKE KANALAKIS, et al.,            )
15                                 )   (Docket Nos. 35, 49, 50, 55)
           Defendants.             )
16  _____ )
17
18                        **INTRODUCTION**

19          Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff

20  is civilly committed at Coalinga State Hospital pursuant to California's Sexually Violent

21  Predator Act, Cal. Welf. & Inst. Code §§ 6600, et seq. ("SVPA").  After Defendants'

22  motion to dismiss was granted in part, Plaintiff's remaining claims concern the

23  conditions of his confinement at the Monterey County Jail between November 26 and

24  December 17, 2007.  Defendants have filed a motion for summary judgment, which

25  Plaintiff opposes.  For the reasons discussed below, the motion for summary judgment is

26  GRANTED, and the other pending motions are also resolved.

27                        **BACKGROUND**

28          Plaintiff was convicted of sex offenses in 1996 for which he served a sentence of

over eight years in state prison.  After the completion of his sentence, he underwent commitment proceedings pursuant to the SVPA in Monterey County Superior Court, and he was committed to Coalinga State Hospital.  Thereafter, his commitment has been periodically renewed at subsequent SVPA proceedings.  He was housed at the Monterey County Jail for the SVPA proceedings and then returned to Coalinga.  Following Defendants' motion to dismiss, Plaintiff's only remaining claims concern one of his stays at the Monterey County Jail, between November 26 and December 17, 2007, for his SVPA proceedings.

When Plaintiff arrived at the jail on November 26, 2007, he was initially placed in a "safety" cell.  (Compl. Ex. B at 4.)[1]  He complained to an officer that the cell was dirty with feces and had a strong odor.  (Id.)  The officer allowed him to wait outside the cell while it was cleaned.  (Id.)  After several hours he was placed in a "booking cell" with another inmate.  (Id.)  The cell was cold and his request for a blanket was denied.  (Id.)

The next day, November 27, a third inmate was placed in the cell.  (Id.)  An officer told Plaintiff that he would be moved to the general population, but Plaintiff objected, explaining that as a civilly-committed SVP he should be separated from inmates awaiting criminal prosecution.  (Id. at 4-5.)  The officer loudly identified him as a "sexually violent predator."  (Id.)  Plaintiff then explained to a Sergeant that he should not be housed in the general population, and, after the Sergeant verified Plaintiff's status with the District Attorney's Office, he moved Plaintiff to his own "Isolation cell" separate from the general population.  (Id. at 5; Bass Decl. ¶ 16.)  Jail administrators considered the cell "Administrative Segregation" because SVPs were housed there in order to protect them, not to punish them.  (Bass Decl. ¶ 16.)  Plaintiff remained there for the following three weeks until he returned to Coalinga.  (Id.)

Also on November 27, Plaintiff also asked for his legal papers, and the Sergeant

---

[1]Exhibit B to the complaint is a sworn affidavit by Plaintiff.

2

agreed to look for them but did not find them.  (Compl. Ex. B at 5.)  The next day, November 28, Plaintiff appeared for his commitment proceedings without his legal papers.  (*Id.*)  The judge granted the prosecutor's motion for an indeterminate commitment without a trial.  (*Id.*)  According to Plaintiff, if he had his legal papers he could have presented to the judge a statement by the prosecutor in another case that a two-year commitment under the SVPA could not retroactively be converted to an indeterminate commitment.  (*Id.*)  After the hearing, the same Sergeant agreed to look for Plaintiff's legal papers again, but again did not procure them.  (*Id.*)

The medical discharge papers that Coalinga sent with Plaintiff to the jail indicated that Plaintiff suffered from obesity, hypertension and high blood pressure, and that he was taking Aspirin, Lipitor, Lisinopril, and Naprosin.  (Defs. Ex. 9;[2] Harness Decl. ¶ 5.)  These and other medications were sent with him from Coalinga to the jail, and jail medical personnel determined that he would receive the medications and a low sodium diet at the jail for his condition.  (Defs. Exs. 8, 9; Harness Decl. ¶¶ 5-6; Compl. Ex. B at 6.)  Plaintiff's medical records indicate that starting on November 27, 2007, he was given Aspirin and Lisinopril, and starting on December 6, 2007, he was given Mevacor (a statin, like Lipitor) and Naprosyn.  (Defs. Ex. 9.)  Plaintiff states that he first received medications on December 6, and he refused to take them because he did not recognize them.  (Compl. Ex. B at 6.)  On December 11, 2007, he received a low sodium meal, and on December 14 he asked for such meals to be discontinued.  (Compl. Ex. B at 6.)

On December 17, 2007, Plaintiff was transferred back to Coalinga.  (*Id.*)

## DISCUSSION

### A.   Motion Papers

Defendants filed a motion for summary judgment (dkt. 35), Plaintiff filed an

---

[2]The exhibits that Defendants submitted on March 5, 2013, in conjunction with their reply brief are identified herein as "Defs. Ex.".

opposition (dkt. 41), and Defendants filed a reply brief (dkt. 45).  Plaintiff then filed a "supplemental" response to Defendant's reply brief (dkt. 47), and thereafter Defendants filed a further reply to Plaintiff supplemental response (dkt. 51). Plaintiff then filed a "reply" (dkt. 54) to Defendants' last filing.  Although these filings were not authorized in the scheduling orders, the Court has considered all of them.  Plaintiff's motion for an extension of time in which to file this latest "reply" brief is GRANTED.

**B.**     **Summary Judgment Standard of Review**

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the lawsuit, and a genuine dispute about a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  If the moving party satisfies that burden, then the nonmoving party must "go beyond the pleadings, and by his own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).

A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

The court's function on motion for summary judgment is not to make credibility determinations or to weigh conflicting evidence.  *T.W. Elec. Serv. v. Pacific Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Rather, the court's function is to view the evidence and any inferences it draws from the evidence in the light most favorable to the nonmoving party.  *Id.* at 631.  However, it is the nonmoving party's duty to identify with "reasonable particularity" the evidence that precludes summary judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Where, as here, the Plaintiff is proceeding pro se, the Court considers as evidence in opposition to summary judgment all of Plaintiff's contentions offered in his motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Plaintiff attested under penalty of perjury that the contents of the motions or pleadings are true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).  In this case, Plaintiff properly attested to the contents of the complaint and to his supplemental opposition brief (dkt. 47), but not to the contents of his opposition to the motion for summary judgment (dkt. 41) or his last "reply" brief (dkt. 54).  Thus, factual statements in the complaint and supplemental opposition brief, as well as in Plaintiff's affidavit and the declarations he has submitted, have been considered as opposing evidence to the extent they are based on personal knowledge and would be admissible in evidence.

**C.**   **Summary Judgment**

1.   Substantive Due Process

Plaintiff claims that the conditions of his confinement at the jail were sufficiently poor that they violated his substantive right to due process.  The substantive right to due process entitles a civil detainee awaiting adjudication of his commitment proceedings, like Plaintiff, to conditions of confinement that are not punitive.  *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).  A restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.  *Id.*

at 933-34 (citations omitted).  Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.  *Id.* at 932.  With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.  *Id.* at 934.  To be sure, the government must be afforded an opportunity to rebut this presumption.  *See id.* at 934-35.

In *Jones*, the Plaintiff was an SVP housed in Sacramento County Jail for over two years, including one year with the general prison population and one year in administrative segregation.  *Id.* at 924.  Throughout, he was subject to numerous strip searches; at least three times he was taken outside at gunpoint and forced to take off his clothes in front several deputies (including female deputies), to lift his penis and testicles, to run his fingers through his hair and mouth, and to bend over, spread his buttocks and cough three times.  *Id.*  In addition, after being housed with the general criminal population, his conditions in segregation became "far worse" than they had been previously.  *Id.*  These conditions were found to be presumptively punitive, and the case was remanded to allow the government to attempt to rebut the presumption.  *Id.*

By contrast, the conditions Plaintiff experienced at the jail during the relevant time period, even when the evidence is viewed in a light most favorable to him, were a far cry from the conditions that *Jones* found punitive.  Whereas the Plaintiff in *Jones* spent two years in county jail and one year housed with the general criminal population, Plaintiff spent three weeks in the county jail and only 24 hours with inmates awaiting

criminal process.[3]  Even then, there was only one such inmate and briefly a second, and there is no evidence that they harmed or threatened Plaintiff. There is also no evidence of the kind of repeated and humiliating searches in front of female employees that occurred in *Jones*.  Although the cell he was initially put into was very dirty, when he told jail officials about it, he was allowed to wait outside the cell while it was cleaned.  Also, when Plaintiff explained his SVP status to prison officials, they put him in his own cell in administrative segregation, separated from the general population that same day, and he remained there for the rest of his time at the jail.  Even if Plaintiff was cold and did not receive a blanket during his first 24 hours at the jail, this does not rise even close to the level of the conditions the Plaintiff in *Jones* faced that were found to indicate punishment.

As noted, Defendants have presented evidence that Plaintiff was placed in administrative segregation for purposes of protection, not punishment.  The conditions that Plaintiff complains about do not suggest otherwise.  As noted, he was not housed with inmates facing criminal process.  The medical records show that Plaintiff was given medications, including a statin and Naprosyn after 11 days there, and a high sodium diet, which are medically appropriate to a person with high blood pressure and other conditions.  (Harness Decl. ¶¶ 4-6; Defs. Exs. 8-9.)  While Plaintiff disputes these records insofar as he complains that he did not receive any medication for his first 11 days, and complains about the low sodium diet, Plaintiff has presented no evidence that such a delay was the result of an intent to punish as opposed to mere negligence, or that his medical needs were sufficiently urgent that he suffered any harm from the delay. Defendants have presented evidence that the conditions he faced in segregation were not similar to those found presumptively punitive in *Jones* insofar as he had daily access to day

---

[3]Plaintiff states in his opposition that he was "stripped searched [sic]".  (Opp. at 9.)  In support of this statement, he cites to page four of his affidavit, but there is no such statement to this effect.  (Compl. Ex. B at 4.)

facilities and an exercise yard, and the same access to the library as general population inmates (i.e. via a slip system). (Bass Decl. ¶ 18, 20; Defs. Ex. 7.) Plaintiff's other complaints about the time he was given his own cell, such as that he had to clean the electric razor before using it and lacked education and self-help programs for three weeks are clearly too minor to rise to the level present in *Jones* suggesting punishment.

Defendants assert that they initially placed him with inmates facing criminal process because the discharge papers sent to jail officials from Coalinga did not indicate that he was a civil detainee, an SVP, or that he was undergoing civil commitment proceedings, and Plaintiff also did not tell jail officials this when he first arrived. (Bass Decl. ¶¶ 8-9; Defs. Exs. 4, 10; Compl. Ex. B at 4-5.) Plaintiff spends considerable time arguing that they knew or should have known his SVP status from the color of his clothing and various documents, which of course Defendants dispute. This dispute is not material, however, because for the reasons discussed above his initial placement with criminal inmates, whether Defendants knew or should have known of his SVP status, was too brief and under conditions neither bad or dangerous enough to reasonably be found to amount to punishment.

Overall, the evidence about the conditions of Plaintiff's three-week stay at the jail, even when viewed in a light most favorable to Plaintiff, does not allow a reasonable inference of punishment. As a result, there is no genuine issue of material fact as to whether or not his substantive right to due process was violated.

2.    Access to the Courts

Plaintiff claims that the failure to provide him his legal papers when he requested them on November 27, 2007, for his commitment proceedings the next day violated his right to access the courts. To establish a claim for a violation of the right of access to the courts, the plaintiff must prove that the jail officials' actions hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement.

8

*Lewis v. Casey*, 518 U.S. 343, 350-55 (1996). To begin with, Plaintiff was represented by an attorney at his proceedings who provided him representation and access to the courts. There is also no evidence that jail officials had his legal papers; Plaintiff's declaration only states that a jail official agreed to look for them but never produced them. In any case, there is no evidence that he was harmed by his lack of access to the papers. The asserted harm is that he would have succeeded at the proceedings if he had his legal papers, but he makes no showing to that effect. His only specific allegation is that he would have been able to produce a hearsay statement from the prosecutor in a different case that a two-year commitment cannot be retroactively converted to an indefinite commitment. He has made no showing as to why he could not present such an argument even without his papers, if not at the proceedings then later on appeal. Nor has he shown that such a statement by the prosecutor is a correct assessment of the law or is binding on his commitment proceedings; the state courts' commitment decision and rejections of his appeals suggest that it was not. As a result, Plaintiff has not shown that his lack of legal papers prevented him from pursuing a non-frivolous claim in his commitment proceedings so as to violate his right to access the courts.

   3. <u>Remaining Claims</u>

  Plaintiff's claim under the Equal Protection Clause fails because his allegations are not that he was treated differently from "similarly situated" people, *see City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985), but rather that he should not have been treated similarly to people with a different status – namely those facing criminal process.

  His claim that his procedural right to due process was violated also fails because he has not identified any clearly established state created liberty interest that triggers procedural due process protections. *See Hydrick v. Hunter*, 500 F.3d 978, 995 (9th Cir. 2007), *rev'd on other grounds*, 129 S. Ct. 2431 (2009), *op. after remand*, *Hydrick v.*

1    *Hunter*, 669 F.3d 937 (9th Cir. 2012).

2          Also, the civil nature of the SVPA means that his claims under the Double

3    Jeopardy and Ex Post Facto Clauses are foreclosed.  *See id.* at 993 (discussing *Seling v.*

4    *Young*, 531 U.S. 250 (2001), in which the Supreme Court rejected such challenges to a

5    similar statute, and *Hubbart v. Superior Court*, 19 Cal. 4th 1138 (1999), in which the

6    California Supreme Court rejected such challenges to the SVPA).

7          His claims under the Eighth Amendment also fail because SVPs are detained for

8    the purpose of treatment, and the state's power to punish them expires at the end of their

9    criminal sentence.  *Id.* at 994.  Substantive due process, discussed above, is the proper

10   vehicle for them to challenge the conditions of their civil confinement, not the Eighth

11   Amendment.  *Id.*

12   **D.    Plaintiff's Motion for Default and Sanctions**

13         Plaintiff has filed a motion for default judgment or sanctions.  (Dkt. 49.)  The

14   motion is based upon complaints about Defendant's response to discovery, as well as

15   other aspects of Defendant's actions in this case.  These complaints are also raised in

16   Plaintiff's supplemental opposition to summary judgment.  (Dkt. 47.)

17         Plaintiff complains that Defendants failed to provide a sufficient response to his

18   request for his medical records maintained at the jail by jail employees.  Defendants

19   provided Plaintiff with the jail's records of the health screening during intake when

20   Plaintiff arrived at the jail.  (Dkt. 51 at 2.)  Plaintiff complains that Defendants did not

21   also supply the medical records that Defendants filed as exhibits in support of his reply

22   brief.  Those medical records were not maintained by the jail, however, but by the

23   California Medical Forensic Group ("CFMG"), who is contracted by the jail to provide

24   medical care.  (*Id.*)  Defendants had directed Plaintiff to contact CFMG to obtain such

25   records.  (*Id.*)  In any event, Plaintiff received these records in conjunction with

26   Defendants' reply brief (dkt. 45), and the Court has considered his supplemental

27

28                                              10

oppositions in which he responded to such exhibits (dkt. 47, 54).  Admittedly, Defendants should have filed the exhibits, as well as the declarations of Harness and Bass with their motion, not their reply brief, but as the Court has considered Plaintiff's two lengthy briefs that responding to the reply, exhibits, and declarations (dkt. 47, 54), Plaintiff has not been prejudiced and the Court finds no cause for granting default or for sanctions.

Plaintiff also complains that Defendants did not provide a sufficient response to his request for documents that "identif[y] and list all criteria of information stored in the Jail Information Management System utilized at the [Jail] at all times relevant to this operative complaint." (Dkt. 47 at 3.)  Defendants indicate that the jail did not have a "Jail Information Management System." (Dkt. 51 at 5.)  Nevertheless, the Defendants provided Plaintiff eight pages of printouts from its database about Plaintiff's booking and processing at the jail.  (*Id.*)  The Court finds this request difficult to understand, and to the extent it is intelligible it is far too vague and overbroad insofar as it appears to seek "all" information about all inmates at the jail, not just Plaintiff, including during time periods that are no longer a part of this case.

Plaintiff also asserts that Defendants made has made a number of "misrepresentations."  These alleged misrepresentations consist of errors as well as arguments disputed by Plaintiff.  The papers of both parties have errors, and frequently show confusion about legal and factual issues.  While this is perhaps more understandable on the part of a pro se Plaintiff than a lawyer, the Court has found nothing that evinces deliberate misrepresentations or other sanctionable conduct on the part of Defendants or their counsel.

Accordingly, Plaintiff's motion for default judgment or other sanctions is DENIED.

//

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (dkt. 35) is GRANTED. Plaintiff's motion for default judgment (dkt. 49) is DENIED. Defendant's motion for an extension of time (dkt. 50) is DENIED as unnecessary because there was no deadline to extend. Plaintiff's motion for an extension of time (dkt. 55) is GRANTED.

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: July 25, 2013

_____
JEFFREY S. WHITE
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JORGE L. RUBIO,

          Plaintiff,

  v.

MIKE KANALAKIS et al,

          Defendant.

_____/

Case Number: CV10-01963 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 25, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jorge L. Rubio
CO-000413-5 Unit T19
P.O. Box 5003
Coalinga, CA 93210

Dated: July 25, 2013

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk